1. DESCRIPTION OF THE RESIDENCE TO BE SEARCHED:

This Application and Affidavit are made to obtain authority to search the premises located at:

1) **xxx xxxxxxxx xxxxxx Southeast, xxxxxxxxxx xxxx, Washington, DC 20032.**

2) **xxx xxxxxxxx xxxxxx Southeast, xxxxxxxxx xxx, Washington, DC 20032.**

The premise located at xxx xoxxxxxx xxxxxx Southeast, Washington, DC is described as a multi-family apartment building constructed of brick. The front door of the building is glass. The numbers "xxx" appear gold in color on a black back ground affixed above the front entrance door of the building.

The description of entrance to Apartment xxxx located within xxx xxxxxxxx xxxxxx Southeast, Washington, DC is described as a blue in color door with a peep hole. The numbers "xxx" written in off-white on a brown placard affixed to a knocker. Below the knocker is a brown rectangular placard.

The description of the entrance to Apartment xxxx located within xxx xxxxxxxx xxxxxx Southeast, Washington, DC is described as blue in color door with a silver door knocker with the numbers "xxx" written in white on a brown backing. Below the door knocker is a peephole. The door handle is on the left portion of the door.

2. AFFIANT'S TRAINING AND EXPERIENCE

I, Cindy Buskey, Special Agent (SA) with the Drug Enforcement Administration, being duly sworn state the following:

I am an agent with the Drug Enforcement Administration (DEA), and have been so employed for a period of nine (9) years. I am currently assigned to the High Intensity Drug Trafficking Area (HIDTA), Group 36 working out of Greenbelt, Maryland office. I have attended and completed the sixteen-week DEA Academy located in Quantico, Virginia. During this training, I learned about the methods which drug traffickers use to manufacture, package, sell and conceal controlled substances. My training required me to learn about source countries and/or cities for certain drugs and the different methods used by different drug traffickers to transport controlled substances for source countries/ cities to different areas of the United States. Your affiant also learned about several different methods used by drug traffickers to launder money and/or proceeds obtained from drug trafficking activities through legitimate businesses, financial instruments and assets which are at times placed in other peoples names. Your affiant has learned about drug conspiracies and different roles that drug traffickers play in these conspiracies, as well as the way drug traffickers store

their drugs and the tools they use in their drug trafficking businesses.

I have furthered my training and knowledge in narcotics law enforcement by attending numerous training classes and seminars including, but not limited to Asset Forfeiture course given by the United States Department of Justice, Drug Enforcement Administration, Analytical Investigative Technics I Course given by the Southeastern Public Safety Institute, Title III Investigative Technique Seminar given by the Special Operations Division of the Drug Enforcement Administration, a Street Survival 1999 given by Calibre Press Incorporated, Advance Agent Training Class given by the DEA,

During these courses I learned about the methods of importation, manufacture, concealment, and distribution of controlled dangerous substances including cocaine, heroin, phencyclidine (PCP), and marijuana.  I have investigated numerous violations of Title 21 of the United States Code, which investigations have resulted in the arrests and convictions of persons in violation of these laws.  I have been the affiant on numerous search and seizure warrants, which have led to the seizure of narcotics, and documents related to narcotic distribution. I have participated in five wire tap investigations, including one in which I was the affiant.  As a result of this experience, I have also become intimately familiar with the technology utilized by narcotic traffickers as well as their methods of operation.

3. PROBABLE CAUSE (FACTUAL BASIS):

Since this Affidavit is being submitted for the limited purpose of obtaining authorization to search the specified location, your affiant has not included each and every fact known to him concerning this investigation.  Your affiant, SA Cindy Buskey, has set fourth the facts that he believes are essential to establish the necessary foundation for the issuance of a search warrant.

The facts that establish probable cause for the issuance of a Search and Seizure Warrant are as follows:

During the month of September 2005, Prince George's Detective Albertson #2565 received information from a confidential source, regarding the illegal distribution of crack cocaine.  The said confidential source advised that it knows of a black male known as Michael WHITE that distributes crack cocaine. The confidential source advised that Michael WHITE distributes crack cocaine from a silver BMW bearing Maryland registration 6ARB48.  Maryland Motor Vehicle Administration (MVA) has this vehicle listed  to a black male named Michael Renard WHITE, date of birth xx-xx-xxxx, and address of xxxx xxxx xxxxx Temple Hills, Prince George's County, Maryland.
A criminal history check through the National Crime Information Center (NCIC) on Michael Renard WHITE revealed the following:

a) On 01-13-89 he was charged by the Drug Enforcement Administration (DEA) with distribution of cocaine and conspiracy to distribute cocaine.

b) On 01-14-89 he was charged by the United States Attorney's Office, Washington D.C., with violation of the Control Substance Act crack.

c) On 07-02-90 he was charged with distribution of cocaine base 50 grams or more and aiding and abetting.

During a ten-day period commencing on September 29, 2005, Det. Albertson #2565, Detective Black #1996 and Detective Jones # 2247 met with the aforementioned confidential source. The Confidential source contacted Michael Renard WHITE and agreed to meet with him at a pre-determined location in Prince George's County, Maryland. Officers searched the confidential source and his/her vehicle and nothing of significance was found. The confidential source was then given a sum of United States Currency, advanced funds of the Narcotic Enforcement Division of the Prince George's County Police Department. The confidential source was instructed to go to the pre-determined location in Prince George's County, Maryland, and purchase a quantity of crack cocaine from Michael Renard WHITE. Officers followed the confidential source to the pre-determined location in Prince George's County, Maryland. Officers maintained surveillance of the confidential source while he/she traveled to the location without stopping or coming into contact with any other person.

While the confidential source was at the pre-determined location in Prince George's County, Maryland a silver four door BMW bearing Maryland registration 6ARB48 drove into the parking lot and parked. The confidential source walked over to the vehicle and entered the silver BMW. Moments later the confidential source exited the silver BMW. WHITE subsequently departed the area driving the silver BMW. The confidential source then walked to Detective Aiken #2643 without coming into contact with any other person and without leaving the sight of Detective Aiken #2643, and handed Detective Aiken #2643 a white rock like substance of suspected crack cocaine. The confidential source subsequently informed Det. Albertson #2565 that he/she had purchased the crack cocaine from Michael Renard WHITE while inside the silver BMW bearing Maryland registration 6ARB48.

A surveillance operation of was conducted during the same ten-day period. Officers observed the 1997 four door silver BMW bearing Maryland registration 6ARB48 operated by a black male. A photograph of the WHITE was obtained from Maryland MVA and subsequently shown to Detective Black #1996, who was a member of the surveillance team and he identified the black male to be Michael Renard WHITE. Detective Black #1996 observed Michael Renard WHITE enter xxx xxxxxxxx xxxxxx SE, xxxx Washington, DC. Detective Black #1996 then observed the same male exit xxx xxxxxxxx xxxxxx, Washington, DC. Officers maintained surveillance on Michael Renard WHITE and observed WHITE meet with an unknown individual at a location in Prince George's

County.  During this meeting, Det. Black observed the unidentified male enter into the 1997 silver BMW bearing Maryland registration 6ARB48 and appeared to exchange items with WHITE within the vehicle. Moments later the unidentified male exited the silver BMW with his hands in his pockets, return to his vehicle and depart the area. Based on your affiant's training, experience and surveillance observations, your affiant believes that WHITE conducted a drug transaction with this unidentified individual. Officers maintained surveillance on WHITE who traveled to another location in Prince George's County. Det. Black observed WHITE exit his vehicle and meet with several males at a store. Officers observed WHITE depart the area and return to xxx xxxxxxxx xxxxxx Washington, DC. Once at xxx xxxxxxxx xxxxxx Washington, DC, officers observed the same male exit the 1997 silver BMW, Bearing Maryland registration 6ARB48 and re-enter xxx xxxxxxxx xxxxxx SE xxxx Washington, DC.  The surveillance operation was terminated at this time.

  On October 14, 2005, your affiant subpoenaed leasing information from Park Southern Apartments located at xxx xxxxxxxx xxxxxx SE, Washington, DC. Your affiant learned that Apartment xxxx is leased to a woman named Jennifer FRYE with a date of birth of xx-xx-xxxx and social security number of xxx-xx-xxxx.  FRYE leased this apartment during the time period of May 28, 2004 through May 28, 2005 for $450.00 a month.  Other listed occupants include Marquise FRYE-WHITE with date of birth xx-xx-xxxx and social security number xxx-xx-xxxx.  Your affiant also obtained a list of rental payments for the month of October 2005 and Jennifer FRYE made a payment of $489.00 dated October 4, 2005 for Apartment xxxx.  Additionally, your affiant learned that Apartment xxxx is leased to a Michael Renard WHITE with a date of birth of xx-xx-xxxx and social security number is xxx-xx-xxxx.  WHITE leased this apartment for the time period of October 1, 2004 through September 30, 2005 for $556.00 a month.  Other listed occupants include a Marquise FRYE-WHITE with a date of birth of xx-xx-xxxx and no listed social security number.  The list of rental payments for the month of October 2005 indicates that a Michael Renard WHITE made a payment dated October 5, 2005 for Apartment xxxx in the amount of $605.00.

  Because Marquise FRYE-WHITE is listed as an occupant of both apartments, your affiant believes Michael Renard WHITE has a connection not only to the apartment listed in his own name, but also to the apartment listed in the name of Jennifer FRYE.

  Officers also queried several databases and learned that Michael Renard WHITE with date of birth xx-xx-xxxx and social security number xxx-xx-xxxx is associated with the address of xxx xxxxxxxx xxxxxx SE, xxxxxxxxx xxx, Washington, DC 20032.

4.  CONCLUSION
  Based on the foregoing, your affiant submits that there is probable cause

to believe that Michael Renard WHITE is involved in the possession of cocaine with the intent to distribute, and that within the above listed locations will be found fruits, evidence, and instrumentalities of the above-listed crime, which are more particularly described in Attachment A.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

5.  ITEMS TO BE SEIZED

As a result of the experience and training received from the aforementioned schools and investigations, your affiants are familiar with the actions, traits, habits, and terminology utilized by individuals involved in the drug culture.
Your affiant knows:

1) That drug traffickers often place assets in names other than their own to avoid detection of these assets by government agencies.

2) That drug traffickers very often place assets in corporate entities in order to avoid detection of these assets by government agencies.

3) That even though these assets are in other persons names, the drug dealers actually own and continue to use these assets and exercise dominion and control over them.

4) That your affiant knows through training, knowledge and experience that persons involved in the distribution of controlled dangerous substances must maintain, on hand, large amounts of United States currency in order to maintain and finance their on going narcotic business.

5) That drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering sale and distribution of controlled substances.  The reason for this is that drug traffickers must main records in order to know the current status of the various illegal transactions in which they are involved.  Since the activity is, by its very nature, clandestine and involves multiple complex financial transactions, the possibility of error and mistake in considerable due to the number, complexity and frequency of the various transactions without the aid of records.

6) That narcotic traffickers commonly front (provide drugs on consignment) controlled dangerous substances to their clients.  That the aforementioned

     computer files, books, records, receipts, notes, ledgers, etc. are maintained where the traffickers have ready access to them.

7) That it is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences and/or their businesses for their ready access and to conceal from law enforcement authorities.

8) It is common for drug traffickers to use secure locations to secrete contraband, proceed of drugs, records of drug transactions, addresses and teleohone numbers of their asscociates in the drug trafficking organization.  These secure locations are often times the homes  of members of the conspiracy or of family members or intimate friends.  This is so the leaders will have a location totally unconnected with the drug records concerning the source of supply, debts due to the conspiracy, and monies owed to the drug suppliers.

9) It is common for individuals who deal in the sale and distribution of illegal controlled substances, particularly heroin and cocaine, to secreted contraband related to those activities such as scales, razors, packaging materials, cutting agents, cooking utensils, microwave ovens, pots, dishes and other containers for preparing heroin, cocaine and other controlled substances for distribution, at their residences, or the residences of family members, friends or associates, in their business locations, or in the places of operation of the drug distribution activity, such as a stash house or safe house.

10) That persons involved in drug trafficking conceal in their residences and businesses caches of drugs, large amounts of currency, financial instructions, precious metals, jewelry, and other items of financial transactions relating to obtaining, transferring, secreting, or the spending of large sums of money made from engaging in narcotics trafficking activities.

11) That when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits. Your affiants know that to accomplish these goals, drug traffickers utilize, domestic banks and their attendant services, securities, cashiers checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts.

12) That drug traffickers commonly maintain addresses or telephone numbers in books or papers, which reflect names, addresses and/or telephone numbers of their associates in the trafficking organizations.

13) That drug traffickers take or cause to be taken photographs and/or videotapes of themselves, their associates, their property, and their product.  That these traffickers usually maintain these photographs or videotapes in their possessions.

14) That the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled dangerous substances.

15) That drug traffickers commonly use cellular telephones and digital display contact pagers as well as other communications devices to keep in constant contact with their suppliers, associates, and clients in the trafficking organization.

16) That drug traffickers have been known to use computers and all electronic data processing units, to include all internal and external storage devices and related hardware and software that might include addresses or telephone numbers in computerized files which reflect names, addresses and/or telephone numbers of their associates in the trafficking organizations; drug traffickers have been known to use computers to maintain and electronically record receipts, notes, ledgers, tally sheets, sums of foreign and domestic currency, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances; drug traffickers have been known to use computers as a communications device to keep in constant contact with their suppliers, associates, and clients in the trafficking organization through the use of Internet service providers and electronic mail systems.

17) That based on training and experience, your affiant knows that drug traffickers commonly have in their possession, that is on their person, at their residence and/or their businesses, firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons. Said firearms are used to protect and secure a drug trafficker's property. Such property may include, but is not limited to narcotics, jewelry, narcotic paraphernalia, computers, electronic devices, books, records, U.S. Currency, etc.

7.  DESCRIPTION OF THE ITEMS TO BE SEIZED:

1) **Crack cocaine,** and any and all controlled dangerous substances, in whatever form, condition or however packaged, and to seize such paraphernalia that is used in the administration, preparation, and distribution or in conjunction with said illegal activities.

2) To seize any books, records, firearms and documents relating to the acquisition, possession or distribution of said controlled dangerous substances.

3) To open any and all safes, locked boxes and receptacles and to seize all contents which pertain to the said illegal activities.

4) Indicia of occupancy, residency, rental, and/or ownership of the premises described herein, including, but not limited to, utility and telephone bills, canceled envelopes, rental, purchase or lease agreements, and keys; and

     5) To search any and all persons found to be involved in said illegal activities.

     6) To view all non-commercially produced videotapes.

     7) To seize electronic equipment, such as computers, facsimile machines, digital pagers and cellular telephones, answering machines, and related manuals used to generate, record and/or store the information described in this exhibit.  Additionally, computer software, tapes and discs, audiotapes, and the contents therein, containing the information generated by the aforementioned electronic equipment and used in the aforementioned violations relating to the transportation, distribution, ordering and purchasing of controlled dangerous substances.

     8) To seize all appointment books, diaries, calendars, financial records, work schedules, computer records, or other documents that detail the aforementioned violations or individuals involved in the aforementioned violations.

     9) To seize all financial documents that are related to the placement of monies used in the aforementioned violations.

     10) To seize photographs, including still photos, negatives, video tapes, films, undeveloped film and the contents therein, slides, in particular photographs of co-conspirators, of assets and/or controlled dangerous substances;

     11) United States Currency, precious metals, jewelry, and financial instruments, including stocks and bonds.

And if property were found there to seize it and to seize any property found liable to seizure under the laws of this State.

SUBSCRIBED AND SWORN BEFORE ME IN MY PRESENCE ON THE _____DAY

OF _____, 2005

_____

                                                          JUDGE

_____

                                                          JUDGE'S PRINTED NAME